# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-01858-SCT

*MARKEITH D. FLEMING a/k/a MARKEITH DARRELL FLEMING*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/17/2013 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| TRIAL COURT ATTORNEYS: | JAY HOWARD |
| | JEFFERY WALDO |
| COURT FROM WHICH APPEALED: | ATTALA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: HUNTER N. AIKENS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | DOUG EVANS |
| NATURE OF THE CASE: | CRIMINAL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED AND REMANDED - 12/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

## DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1. In this murder and aggravated-assault prosecution, the defendant, Markeith Fleming, claimed he was in another county at his girlfriend's house at the time the shooting occurred. Approximately two weeks before trial, the State disclosed its intent to have an AT&T engineer testify about Fleming's whereabouts, using Fleming's cell-phone records. Fleming requested a continuance to obtain his own expert on the subject, but the circuit judge denied

that motion, finding that the engineer would testify only about information that was contained in the records and that had been disclosed to defense counsel much earlier. Because the engineer—without being tendered or accepted as an expert—actually was allowed to provide expert testimony beyond the information contained in the records, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2. As Christopher Graham and Derrick Hannah were driving outside Kosciusko, Mississippi, a white sedan pulled along beside them and an occupant of the sedan began shooting into their vehicle. Graham was killed and Hannah was injured. At trial, Hannah identified Fleming as the shooter in the white sedan. However, the jury also heard that Fleming told law enforcement officials that he was at his girlfriend's house in Winona, Mississippi, at the time of the shooting.

¶3. So, to establish Fleming's presence at the shooting, the State used Fleming's AT&T cell-phone records. In March 2013, the State had provided Fleming's counsel a copy of the AT&T records in its response to his request for discovery. On August 13, 2013, the State supplemented that response, identifying Michael Lynchard as the AT&T records custodian whom the State intended to call at trial. But, three days later, the State filed its request for subpoenas and listed Thomas Gandy from AT&T, not Lynchard.

¶4. On August 28, 2013, the State supplemented its discovery response once again, now explaining that it intended to call Gandy, an AT&T engineer, to testify about cell towers and cell-tower locations, calls and text messages made from Fleming's phone, and to identify the towers used by Fleming's phone. With this supplement, the State provided a map of cell

2

towers. Finally, on September 11, 2013, five days before the scheduled trial, the State provided Gandy's curriculum vitae to Fleming's counsel.

¶5. Two days later, Fleming moved for a continuance. The motion averred that defense counsel did not receive the State's second supplement to its discovery response—filed August 28, 2013—identifying the substance of Gandy's testimony, until September 9. Fleming supported this contention with an envelope from the prosecutor bearing a September 5 postmark. The motion requested more time for the defendant to retain an expert to respond to the State's intent to use "[t]he expert testimony of Thomas Gandy . . . to try to pinpoint the Defendant to the location of the alleged murder."

¶6. September 16, the trial date, the parties argued the motion for continuance. Fleming's counsel argued that he timely requested discovery, including any expert witnesses the State intended to call. He argued that, just one week before trial, the State had disclosed its intent to call Gandy as an expert to pinpoint the time and location of Fleming's cell-phone calls. The State responded that the cell-phone records were provided to defense counsel in March 2013, and that the September 5 envelope related to a different document.

¶7. The circuit judge found that the State "provided [defense counsel] with his request for discovery at least six months ago, some of which included all these cell phone records and things that this expert would testify to." The judge concluded that defense counsel failed to show "what an expert could testify to to contradict this at all, and, and no basis for why you would even need to have an expert in this matter." The judge also found that defense counsel

3

had to know that someone would testify about the phone records once the State disclosed its intent to use them in March 2013.

¶8. At trial, Gandy testified about Fleming's cell-phone records. The State did not tender him as an expert. He identified Fleming's phone records, explained their contents, and testified that they were regularly kept AT&T business records. Importantly, Gandy's description of the records' contents extended beyond merely reading from the document. Rather, Gandy had to explain the meaning of certain entries because their meaning was not readily ascertainable from the document itself.

¶9. Gandy used information provided in the records under a column titled "Cell Location" to identified the location of cell-phone towers on a map and to explain when Fleming's phone connected with particular towers. He explained that this information could be used to determine "where the mobile is located in reference to the cell site." He testified to particular locations where Fleming's phone was located at a given time, and explained how cell-phone technology works. No objections were lodged to Gandy's testimony, and, after he finished testifying, the circuit judge noted that:

> It was alleged on the motion for continuance that Mr. Gandy was an expert and that the defense needed to respond to an expert. Mr. Gandy was neither offered as an expert, nor did he give any expert opinion in this case. He merely testified to the records that the defendant had in March. And therefore, there is no expert testimony to respond to.

¶10. After the jury convicted Fleming of murder and aggravated assault, he appealed and argued that the circuit judge had erred by denying his motion for continuance; that notwithstanding his counsel's motion for continuance, he had provided constitutionally

4

ineffective assistance for failing to object to Gandy's testimony at trial; and that the jury had rendered a verdict against the overwhelming weight of the evidence.[1]

¶11.    The Mississippi Court of Appeals found that the circuit judge did not err by denying a continuance because the State called Gandy as a lay witness to explain the contents of the cell-phone records, not to provide his independent knowledge of the subject matter, and because the records were provided to defense counsel long before trial.[2]  To reach that conclusion, the Court of Appeals relied on its decision in *Collins v. State*, which held that a witness could provide testimony like Gandy's without being accepted as an expert.[3]  And for that same reason, the Court of Appeals concluded that Fleming's counsel was not deficient for failure to object to Gandy's testimony.[4]

¶12.    But after the Court of Appeals affirmed Fleming's convictions on April 14, 2015, this Court reversed the Court of Appeals' decision in *Collins*.[5]  Fleming then petitioned this Court for certiorari, arguing that this Court's *Collins* decision requires a witness qualified as an expert to provide testimony like Gandy's, and that the circuit court erred by denying Fleming a continuance to retain his own expert.  Fleming also argued that his counsel provided

---

[1] *Fleming v. State*, No. 2013-KA-01858-COA, 2015 WL 1726155, *1 (Miss. Ct. App. April 14, 2015).

[2] *Id.* at **7–8.

[3] *Collins v. State*, 172 So. 3d 813, 825 (Miss. Ct. App. 2014), *rev'd*, 172 So. 3d 724 (Miss. 2015).

[4] *Fleming*, 2015 WL 1726155, at *10.

[5] *Collins*, 172 So. 3d at 727.

ineffective assistance by failing to object to Gandy's testimony, and that the jury's verdict conflicts with the overwhelming weight of the evidence.

**ANALYSIS**

¶13.    The circuit judge and the Court of Appeals found that Fleming was not entitled to a continuance because, in their view, Gandy testified only about information that a lay witness could deduce from Fleming's cell-phone records.  The Court of Appeals supported that view with its decision in *Collins*.  But this Court reversed that decision after the Court of Appeals decided this case, and we now must reverse its decision here as well.

¶14.    Under Mississippi Rule of Evidence 702, a witness must be qualified as an expert to provide expert opinions or to provide any testimony that is based on "scientific, technical, or other specialized knowledge."[6]  A party may not avoid the requirements of Rule 702 by providing lay testimony about "facts" contained in a document or report, when the witness needs specialized knowledge to do so.[7]  And, in *Collins*, this Court held that "testimony that goes beyond the simple descriptions of cell phone basics, specifically testimony that purports to pinpoint the general area in which the cell phone user was located based on historical cellular data, requires scientific, technical, or other specialized knowledge that requires expert testimony."[8]

---

[6] Miss. R. Evid. 702.

[7] *Palmer v. Volkswagen of America, Inc.*, 904 So. 2d 1077, 1091–92 (Miss. 2005).

[8] *Collins*, 172 So. 3d at 743.

¶15. Here, Gandy provided "testimony that purports to pinpoint the general area in which the cell phone user was located based on historical cellular data." While explaining Fleming's phone records, Gandy stated that:

> Basically this information tells us where the mobile is located in reference to the cell site. We can -- we can do a -- we can look at the orientation of the antennas on the cell site and come up with a general idea of which direction the mobile is located.
>
> Our cell sites are sectorized into three different antenna systems with one antenna facing to the northeast, one to the south, and one to the northwest. So from those three directions, we can get a, a basic idea of which general area the mobile is in when the call was placed.

Then, after Gandy plotted the location of cell-phone towers on a map, the prosecutor asked:

> Q. So I guess just to sum this up, what you are talking about, it appears this particular cell phone, this (662) 739-3151 started the morning out in Winona. And then around 10:00 it looks like the phone was south of there in West Vaiden. Then down to Possum Neck and into the Kosciusko area. Then a little before noon the phone was still in that general [area]. Then right after noon it appears the phone then headed north, back up to the Winona area; is that correct?
>
> A. That's correct. Yes. That's what the records show.

Gandy then, at the prosecutor's request, engaged in a lengthy discussion of how cell phones and cell-phone networks function.

¶16. This testimony crossed the line into expert testimony under *Collins*, and it exceeded the information contained in the phone records. Said differently, because Gandy provided specialized knowledge on the workings of cell-phone technology and used the information contained in Fleming's phone records with his specialized knowledge to identify Fleming's

7

location, the records themselves, when provided in response to Fleming's discovery request, did not put him on notice of the testimony the State would present at trial.

¶17. So the circuit judge and the Court of Appeals erred by concluding that Gandy provided no expert testimony, and that the State's disclosure of the phone records in March 2013 provided sufficient notice of the State's intent to use expert testimony to establish Fleming's whereabouts at the time of the murder. Because the State ambushed Fleming with this expert testimony shortly before trial, his request for a continuance to consult with an expert of his own should have been granted.

## CONCLUSION

¶18. Because the State ambushed Fleming with Gandy's expert testimony, his request for a continuance should have been granted. So, we reverse the judgment of the Court of Appeals as well as Fleming's convictions for murder and aggravated assault, and remand this case for a new trial. Because we reverse on this issue, we need not address his weight-of-the-evidence and ineffective-assistance-of-counsel claims.

¶19. **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR**.

8